
UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | \* | CR. 12-40092 |
| Plaintiff | \* | |
| vs. | \* | REPORT and RECOMMENDATION |
| JUAN LOZANO MUNOZ, | \* | |
| Defendant | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending is Defendant's Motion to Suppress (Doc. 22). A hearing was held on Thursday, October 4, 2012. Defendant was personally present and represented by his counsel of record, Federal Public Defender Mr. Jason Tupman. The Government was represented by Assistant United States Attorney Connie Larson. Mitchell Police Officer John Badker and Department of Homeland Security Agent Charla Aramayo testified at the hearing. A compact disc recording of the traffic stop was admitted into evidence as EX 1. Officer Badker's written incident report was received into evidence as EX A. Additionally, both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all of the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Suppress be **DENIED.**

## JURISDICTION

Defendant is charged in an Indictment with Illegal Reentry after Deportation in violation of 8 U.S.C. § 1326(a). The pending Motion to Suppress was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Schreier's Standing Order dated March 18, 2010.

## FACTUAL BACKGROUND

Two witnesses testified at the evidentiary hearing and the Court received the exhibits

described above. The testimony and evidence is summarized below:

### Mitchell Police Officer John Badker

Officer Badker has been employed as a Mitchell patrol officer for five years. In the late evening hours of July 31, 2012, he stopped a vehicle during the course of routine traffic stop for a burned out tail light.[1] Badker stopped the vehicle stopped at 22:20 hours (10:20 p.m). The driver stopped without incident . The driver was able to converse, but his English was very broken. Badker is not a Spanish speaker, and had to repeat himself several times when conversing with the driver. The driver indicated he was headed for his motel. Mitchell had a hail storm in May. The driver indicated he was with a roofing crew working on a job. When asked for his driver's license, the driver indicated he did not have a valid driver's license, but produced a Mexican ID card. The driver said he was from Omaha. Normally if someone produced an ID card Badker would step back to the patrol car to call dispatch to check the driver's license. Dispatch told Badker they could not run a Mexican ID card.

Badker asked the driver about registration information for the vehicle. The vehicle was not registered to the driver or any of the passengers. The driver said the vehicle was registered to his boss. The dispatcher verified that information. Badker asked the driver to exit the vehicle. They moved the vehicle first because it was in a construction zone and a busy street. Badker asked for consent to search the driver's person. Badker's search of the driver revealed nothing illegal.

The driver indicated he was working for Excel Construction in Mitchell. Badker contacted the driver's employer. The bulk of Badker's conversation with the employer involved the immigration status of the driver. Badker's phone conversation with the employer verified the driver had permission to drive vehicle and that the men were on a roofing crew. Badker did not discuss the back seat passenger (Munoz, the Defendant in this case) during the phone conversation with the employer.

---

[1]Driving with a burned out tail light is a violation of SDCL 32-17-8.

2

Badker intended to call ICE regardless of what the employer told him about the men's immigration status. The driver handed Badker a cell phone to facilitate a conversation with the driver's wife on the driver's cell phone. Badker asked the driver's wife about the driver's immigration status. Badker asked the driver about "paperwork" for the two passengers. Badker explained he routinely asks passengers for identification when he stops a vehicle for a tail light violation. He does not routinely ask for "papers" but he had a language barrier in this case. The passengers did not have any identification.

The front seat passenger had a Honduran birth certificate but Munoz had no identification. Badker's conversation with the driver's boss revealed that the driver had permission to drive the vehicle, but Badker explained that if nobody in the vehicle had a valid drivers license, he could not allow any of the occupants drive it away from the scene.[2]

Badker asked dispatch to contact ICE for him. Badker was instructed to contact Craig with ICE. Badker was then instructed to contact a different ICE officer (Charla). Badker explained that because the men in the vehicle had no papers, there was no other way he could identify them or determine whether they were in the country legally. Charla from ICE called Badker at 10:49 p.m. Before he called ICE, Badker had talked with the driver's supervisors from Excel Construction (Chris and Ray) to confirm the driver had permission to drive the vehicle. Badker spoke with Charla to verify if the driver was here legally. He also gave her the information from the front seat passenger who had a Honduran birth certificate. Badker did not know the third passenger's name before he spoke to Charla from ICE for the first time. The driver, however, told Badker that Munoz did not have any papers. On the DVD, Badker can be seen leaving the patrol car and walking back to the vehicle to converse with Munoz. EX 1 at 22:58. Badker testified that Munoz wrote his name and date of birth on a piece of paper. At 22:61, Badker called Charla again and relayed Munoz's information to her. Badker gave Charla his cell phone number to call back with the information about all three men. Badker then began issuing a warning ticket to driver for the burned out tail light and a ticket for driving without a license. Badker told the driver he was waiting for ICE to

---

[2]It is a violation of SDCL 32-12-22 to drive without a valid license.

check their status.

Charla called back later with the information about all three occupants of the vehicle. Badker indicated there was a time lag of ten minutes. From time of first call from Charla to the return call from her was at least twenty minutes.[3] Charla called back and said the driver was on voluntary departure status. Charla asked Badker to detain the two passengers because they had already been

---

[3]The DVD of the traffic stop has been viewed in its entirety. The relevant events and the times at which they occurred are summarized below:

22:20  Vehicle is stopped
22:21  Badker asks driver for his license; driver produces a Mexican ID card
22:22  Badker asks if the passengers have any identification and asks the driver if the passengers have any papers
22:23  The front seat passenger produces a Honduran birth certificate; Badker asks if the "guy in the back has any papers?"
22:25  Vehicle is moved out of construction zone
22:26  Badker asks for registration and insurance information and asks driver to come to patrol car
22:29  Badker attempts to call driver's Mexican ID information in to dispatch
22:32
22:37  Badker talks to driver's employer
22:40
22:44  Badker talks to driver's wife at driver's insistence
22:44  Badker calls Craig Scherer from ICE
22:49  Charla Aramayo from ICE calls Badker and he gives her the information he has about the driver and front seat passenger.
22:55  Badker tells Charla he has no information yet about the back seat passenger
22:57  Badker asks driver if back seat passenger has any paperwork; driver says "no, nothing."
22:58  Badker leaves patrol car, walks to vehicle. (Badker testified that Munoz wrote his name and date if birth on a piece of paper for him)
23:01  Badker calls Charla Aramayo back and relays information about the back seat passenger.
23:04  Badker gives Charla Aramayo his cell phone number to call with information about all three men.
23:12
23:15  Badker writes a summons for the driver for driving with no license. He explains to the driver he is still waiting for ICE to call back.
       (Shortly after this conversation, Badker steps out of the patrol car)
23:33  Badker converses with Aramayo on the phone again, requesting instructions about whether to take the men to jail or wait by the roadside.
23:40  The vehicle is moved and the driver is instructed he is free to go but that ICE will be taking custody of both passengers.
23:44  Both passengers are removed from the vehicle and placed in the patrol car
23:53  Both passengers are told that ICE is on its way to take custody of them.

4

deported once. Badker transported the passengers to the Davison County jail.

**Homeland Security Special Agent Charla Aramayo**

Ms. Aramayo is a Special Agent for the Department of Homeland Security. She investigates immigration violations. On the evening of July 31, 2012, she received a phone call from Officer Badker from Mitchell Police Department. He had thee persons in custody and wanted her to check their status. She called the Law Enforcement Support Center. It is a twenty-four hour support center. They can run information through ICE databases. In this case, because all three subjects had records their information went through every database available. The record check took fifteen or twenty minutes. The driver had already been through removal proceedings. He had been ordered to depart voluntarily. The other two individuals had previous removals. Aramayo asked the officer to detain those two subjects and wait for her to come pick them up.

Aramayo explained that if a person is lawfully in the United States but is not a citizen they are required to always carry identification.[4] Aramayo called the Law Enforcement Support Center. She called all three names in at the same time. Aramayo instructed the Mitchell officer to detain the two passengers because she needed to find another agent to come with her to Mitchell to transport them. She drove to Mitchell to get them and told them they were under arrest, cuffed them and brought back to Sioux Falls. She brought hem back to Sioux Falls, fingerprinted them, and ran them through the IDENT system.

## DISCUSSION

Munoz moves to suppress "all evidence and statements including his identity obtained as a result of" the traffic stop on the grounds that it was "unlawfully prolonged beyond the time reasonably required to complete the purpose of the stop." *See* Doc. 22.

**Burden of Proof**

As a general rule, the burden of proof is on the defendant who seeks to suppress evidence,

---

[4]The statutory authority for this requirement is found at 8 U.S.C. Section 1304(e).

5

*United States v. Phillips,* 540 F.2d 319 (8th Cir.1976), but on the government to justify a warrantless search or seizure. *United States v. Bruton,* 647 F.2d 818 (8th Cir.1981). The standard of proof is a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

### 1. Proper Scope of the Traffic Stop

It is well settled that "when an officer observes a traffic offense–however minor–he has probable cause to stop a vehicle." *United States v. Eldridge,* 984 F.2d 943, 947 (8th Cir. 1993) (internal punctuation and citations omitted). Munoz does not allege the traffic stop for a burned out tail light was invalid.

Typically, "a reasonable investigation of a traffic stop may include asking for the driver's license and registration, requesting the driver to sit in the patrol car, and asking the driver about his destination and purpose." *United States v. Johnson,* 58 F.3d 356, 357 (8th Cir.1995). An officer may undertake similar questioning of other vehicle occupants to verify information provided by the driver. *Id.* The officer may ask the vehicle's occupants, including passengers, a "moderate" number of questions and request their identification. *United States v. Muriel,* 418 F.3d 720, 726 (7th Cir. 2005).[5] He may also run a computer check to determine if the vehicle is stolen, and to ascertain whether there are any outstanding arrest warrants for any of the vehicle's occupants. *United States v. White,* 81 F.3d 775, 778 (8th Cir. 1996). If the answers to any of these routine questions or inquiries arouse suspicion that other criminal activity is afoot, the officer may ask additional questions to verify or dispel his suspicion. *United States v. Yang,* 345 F.3d 650, 655 (8th Cir. 2003) (citations omitted). Conflicting stories may provide justification to expand the scope of the stop and detain the occupants. *United States v. Sanchez,* 417 F.3d 971, 975 (8th Cir. 2005) (citations omitted). Additionally, "an investigative stop can grow out of a traffic stop so long as the officer has reasonable suspicion to expand his investigation, even if his suspicions are unrelated to the traffic

---

[5]In 2005, the United States Supreme Court explained that no reasonable suspicion is required to question persons already legally detained about their immigration status if the questioning does not prolong the detention. *Muehler v. Mena,* 544 U.S. 93, 101, 125 S.Ct. 1465, 1471, 161 L.Ed.2d 299 (2005).

6

offense that served as the basis for the stop." *United States v. Long*, 320 F.3d 795, 800 (8th Cir. 2003). Officers are not required to ignore their reasonable suspicions "rather, they are permitted to graduate their responses to the demands of any particular situation." *United States v. McCarty*, 612 F.3d 1020, 1025 (8th Cir 2010).

The officer may consider the totality of the circumstances when deciding whether reasonable suspicion supports an investigatory detention. *Yang*, 345 F.3d at 655. Thus, even if individual actions "might be innocently explained, [the] behavior must be considered as a whole and in light of the officers' experience and specialized training." *Id.* "Though each factor giving rise to suspicion might appear to be innocent when viewed alone, a combination of factors may warrant further investigation when viewed in its totality." *United States v. Morgan*, 270 F.3d 625, 630 (8th Cir. 2001). In other words, the circumstances should not be analyzed in isolation.

An investigative detention, however, must be temporary and last no longer than necessary to effectuate the purpose of the stop. The officer must use the least intrusive means reasonably available to verify of dispel his suspicion in a short period of time. *Sanchez, Id.* "An investigative detention may turn into an arrest if it lasts for an unreasonably long time or if officers use unreasonable force." *Id.* In Sanchez, the forty-five minute detention was reasonable. The Court noted "the majority of the nearly forty-five minute encounter was spent completing the traffic stop, including time spent by [the officer] to confirm the identity of Sanchez based upon the highly suspect ID that he provided." *Sanchez*, 417 F.3d at 975. The Court noted the delay "caused by the multiple computer checks of the ID" which was "necessary to [the officer's] legitimate investigation . . ." *Id.* "A total duration of approximately forty-five minutes is certainly not unreasonable given these circumstances, and these officers employed the least intrusive means of detention and investigation."

### 2. Badker Did Not Exceed the Proper Scope Nor Unreasonably Prolong the Stop

Over an hour transpired between the time Badker stopped the vehicle in which Munoz was riding and the time Munoz was finally informed that ICE would be taking him into custody. Such a period of time is reasonable under the totality of the circumstances. *See Sanchez*, 417 F.3d at 975. More importantly, however, it was reasonable for Badker to inquire about the immigration status of

7

the driver and the passengers, including the Defendant, Mr. Munoz.

As part of any traffic stop, the officer is permitted to request identification from the driver and the passengers. Badker testified that he regularly does so. At the outset of the traffic stop which is the subject of Munoz's Motion to Suppress, however, Officer Badker was met with an inability from any occupant of the vehicle to comply with this most basic request. The driver did not produce a valid driver's license, but only a Mexican ID card, which could not be verified by dispatch. The two passengers could not produce any form of ID, save a Honduran birth certificate. None of the men spoke much English, the truck they were occupying was not registered to any of them, and none of them could produce any proof of legal presence in the United States. Given this state of affairs, and that 8 U.S.C. Section 1304(e) requires all legal aliens to carry their alien registration paperwork with them at all times, Badker decided to call Immigration and Customs Enforcement (ICE) for assistance. *See e.g. United States v. Ramirez-Cubillas*, 223 F.Supp.2d 1049, 1053-54 (D. Neb. 2002); *United States v. Torres-Monje*, 433 F.Supp.2d 1028 (D. N.D. 2006); *United States v. Aispuro-Medina* 256 Fed. Appx. 215 (10th Cir. 2007) (all describing similar circumstances and finding no Fourth Amendment violation when officer inquired into immigration status). Badker was entitled to inquire about the identity of the passengers. When Munoz could not produce any identification, Badker's call to ICE to verify Munoz's immigration status did not unreasonably prolong the traffic stop. For these reasons neither Badker's inquiry about Munoz's identification nor his immigration status violated the Fourth Amendment.

## CONCLUSION

For the reasons more fully explained above, it is respectfully RECOMMENDED to the District Court that the Defendant's Motion to Suppress (Doc. 22) be DENIED.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by

the District Court.

*Thompson v. Nix,* 897 F.2d 356 (8th Cir. 1990)
*Nash v. Black*, 781 F.2d 665 (8th Cir. 1986)

    Dated this __10__ day of October, 2012.

            BY THE COURT:

            _____
            John E. Simko
            United States Magistrate Judge

ATTEST:
JOSEPH HAAS, Clerk

By_____, Deputy

(SEAL)